**EMPLOYERS' CASUALTY CO. et al. v. ROCKWALL COUNTY et al.***

(No. 9915.)

Court of Civil Appeals of Texas. Dallas. July 2, 1927.

Appellant's Motion to Make and File Additional Findings of Fact Granted and Rehearing Denied Nov. 26, 1927.

**1. Trial ☞2—Trial court properly required consolidation of separate suits involving rights under road contractors' bond (Rev. St. 1925, art. 5162).**

Under Rev. St. 1925, art. 5162, trial court properly required consolidation of separate suits involving liability under road contractors' bond in order that all rights asserted thereunder might be determined in one litigation, regardless of amount of claims or parties asserting same.

**2. Process ☞6—Failure of intervener, in suit on highway contractors' bond, to obtain service of citation on principals, held immaterial (Rev. St. 1925, art. 5162).**

Failure of intervener, in suit involving rights under highway contractors' bond, to obtain service of citation on principals of bond, *held* immaterial, in view of Rev. St. 1925, art. 5162, providing that any creditor may file claim

in action, or be made party thereto, within one year of completion of work under contract.

**3. Appeal and error ☞564(2)—Exceptions, bill of ☞39(1)—Appellant's failure to file statement of facts and bills of exception 60 days after denial of new trial did not preclude review, where statement of facts and transcript were filed 80 days after perfecting appeal (Rev. St. 1925, arts. 2253, 2267, and art. 2246, subds. 1, 3; Court of Civil Appeals rules 3, 5).**

Failure of appellant to file statement of facts and transcript within 60 days from date motion for new trial was overruled as allowed *held* not to preclude review of judgment, where statement of facts as well as transcript of record was filed in lower court pursuant to Rev. St. 1925, art. 2246, subd. 3, within less than 80 days from date appeal was perfected, since trial court had no power to shorten period of 80 days permitted under subdivision 1, for filing statement of facts in bill of exception, and transcript was only required to be filed with clerk of civil appeals within 90 days from perfecting appeal, which, under articles 2253 and 2267, occurred when appeal bond was filed, and under rule 3 of Court of Civil Appeals, either litigant may file transcript, and under rule 5, transcript if filed within proper time by either party shall be regarded as transcript of record.

**4. Election of remedies ☞12—Pending suit for debt in county court against highway contractors and surety did not bar intervention in subsequent suit on bond.**

Pending suit for debt in county court against highway contractors and surety constituted no bar to creditor's right to intervene in subsequent suit on bond, since filing of plea in intervention was but in effect an abandonment of suit in county court, which had no jurisdiction to determine claim under bond of over $1,000.

**5. Courts ☞169(7)—"Jurisdiction of suit" on highway contractor's bond is determined by amount of bond.**

Jurisdiction of suit on highway contractors' bond is not determined by amount of any one creditor's demand, but by amount of bond, liability of surety being measured by penalty named therein, which determines the court's jurisdiction.

**6. Appeal and error ☞756—Rules for briefing prescribed will not be strictly adhered to, if denying hearing on just and meritorious cause.**

Rules for briefing prescribed for Courts of Civil Appeals were promulgated only to aid appellate courts, in performance of their labors, to readily ascertain and investigate questions presented by appeals for review, and unless strict adherence is necessary to accomplish such purpose, rule should not be strictly adhered to, especially where such strictness would result in denying hearing on just and meritorious cause.

**7. Appeal and error ☞997(3)—Judgment on directed verdict will be reversed unless no other result could have been reached by jury.**

Judgment rendered on directed verdict will be reversed unless it appears from record that

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted February 22, 1928.

no other result could have been reached by jury than that directed by court.

**8. Assignments ⚖══85—Assignment to surety of sums to become due on highway contract prevails over subsequent assignment to bank.**

Prior equitable assignment of funds to become due on highway contract by contractors in favor of surety on bond prevails over subsequent assignment of sum to become due thereunder for money advanced by bank.

**9. Highways ⚖══113(5)—Proper interpretation of expressions incident to purpose for which bond was executed will be resorted to for ascertainment of extent of obligation.**

Rights of parties under highway contractors' bond must be determined by plain language of bond, but a proper interpretation of expressions incident to purpose for which bond was executed will be resorted to to ascertain extent of obligation and enforce rights of parties thereunder.

**10. Highways ⚖══113(5)—Bank furnishing contractors money to pay labor claims held entitled to recover against surety.**

Under highway contractors' bond, guaranteeing payment for labor and material furnished in performance of contract or in any manner incident to performance of contract, bank furnishing money to contractors for use in paying labor claims *held* entitled to recover therefor against surety.

**11. Highways ⚖══113(5)—Statutory requirement of prompt payment of contract for labor or materials will be read into bond (Vernon's Ann. Civ. St. 1925, art. 5160).**

Additional obligation required by Vernon's Ann. Civ. St. 1925, art. 5160, that highway contractor shall promptly make payment to all persons supplying labor or materials, being a statutory requirement, will be read into, as forming a part of, bond furnished by contractors just as if contained therein.

**12. Highways ⚖══113(5)—Bank furnishing money to pay labor on road contract and awarded amount retained by county less than amount advanced is entitled to affirmance.**

Where bank furnishing money for payment of labor in performance of road contract recovered amount retained by county in suit on bond which was less than amount advanced, it is entitled to have amount so awarded affirmed, since though such amount had been awarded to surety, the bank would be entitled to recover against surety on bond as for labor performed or incidental to labor performed in construction of road.

**13. Highways ⚖══113(5)—Person furnishing oil, gas, and automobile repairs and parts in performing road contract held entitled to recover on bond.**

Person furnishing road contractor oil and gasoline and performing labor in repairing automobile and furnishing tires and batteries therefor, all of which were necessary in performance of road contract, *held* entitled to recover therefor on bond.

**14. Highways ⚖══113(4)—Reasonable attorneys' fees, to be awarded county tendering amount due under highway contract into court, held for jury.**

Reasonable amount of attorneys' fees, to be awarded the county occupying position of stakeholder with reference to amount retained by it on highway contract and which amount was tendered into court, *held* an issue of fact for submission to jury notwithstanding only testimony was that of one witness relative to what was reasonable sum.

**15. Highways ⚖══113(5)—Evidence as to material furnished highway contractor held to require submission of right to recover therefor on bond to jury.**

Evidence that materials furnished highway contract were necessary to performance of contract, and that surety in completing contract took over materials so furnished that were not used in construction of road and appropriated such to its own use and benefit, *held* sufficient to require submission of issue as to right of recovery on bond to jury for its determination.

**16. Highways ⚖══113(5)—Allegation that merchandise was necessary to provide sleeping and eating accommodations for laborers on road contract stated cause of action on bond.**

Allegation that merchandise was furnished to highway contractors and that it was necessary for and incident to performance of contract, in that it was necessary to provide sleeping and eating accommodations for laborers performing labor in performance of contract, *held* sufficient to constitute a cause of action on bond.

Appeal from District Court, Rockwall County; Joel R. Bond, Judge.

Suit by the Employers' Casualty Company against Rockwall County and others, consolidated with an action by the McDonald Hardware Company against Kirk & Patterson and others, and by the Farmers' National Bank of Rockwall against J. H. Patterson and others, wherein Paul Snow, doing business as the Snow Motor Company, intervened in the case of McDonald Hardware Company against Kirk & Patterson and others, and after the consolidation T. A. Snow, J. H. Smith, and the Farmers' National Bank of Rockwall intervened in the consolidated action. From the judgment therein, the Employers' Casualty Company, the McDonald Hardware Company, and J. H. Smith appeal. Affirmed in part, and in part reversed and remanded.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellants.

Leake, Henry, Wozencraft & Frank, Wallace & Taylor, and Horace Bishop, all of Dallas, and Carl G. Miller and H. M. Wade, both of Rockwall, for appellees.

VAUGHAN, J. Employers' Casualty Company, a private corporation organized under the laws of the state of Texas, instituted its

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

suit on the 10th day of September, A. D. 1925, against J. H. Patterson, D. S. Kirk, J. G. Braddock, and the county of Rockwall, state of Texas, a municipal corporation, as defendants, the cause of action being based upon the following facts:

On September 11, 1924, said Kirk & Patterson, as a copartnership, for a valuable consideration, contracted with said county to build and construct for said county nine miles of concrete road eight feet wide; said contractors, as principals, furnished to said county a bond to secure the faithful performance of said contract in the sum of $35,000, executed by them with the Employers' Casualty Company as surety; said contractors later associated one J. G. Braddock with them in said contract; the constructing of said road proceeded until about the 13th day of February, 1925, at which time said contractors defaulted and were unable to further proceed with said contract for the lack of funds. The Employers' Casualty Company was advised of this situation, discussed it with the county authorities, and, under its liability as surety on said bond, entered into contract with said contractors whereby it, as surety, was to complete the work under said contract for said county and have control of the money then due as well as money that might thereafter become due under said contract; that at the time of the execution of said bond, as a part of the consideration for the Employers' Casualty Company becoming surety thereon, it demanded and received from said contractors an equitable assignment and an indemnity agreement, the pertinent parts of which were as follows: The contractors agreed to indemnify the surety against all loss, costs, damage, charges, and expenses that it might incur by reason of said suretyship; said contractors further as of July 25, 1924, before work was begun under said contract, made an equitable assignment to the surety of "all of the deferred payments and retained percentages and any and all moneys and properties that may be due and payable to them at the time of any breach or default in the contract or cessation of work thereunder or that may thereafter at any time become due and payable to them on account of said contract, or on account of any extra work performed or materials furnished in connection therewith," said assignment contained the further provision that the contractors "do further agree that all such moneys and the proceeds of all such payments or properties shall be the sole property of said company (the surety), for its sole use and benefit, to be by it credited upon any loan or advances made on account of said contract or upon any cost or expense or advancement of any nature whatsoever that the company may or might in its judgment make or become liable for." In completing the contract from the date of the

default by contractors, February 13, 1925, the Employers' Casualty Company, as surety, expended the sum of $31,106.41. In addition to this, said contractors owed to said surety, for other items, the sum of $2,079.62. From February 13, 1925, until the contract was performed and work thereunder accepted, said surety received as proceeds therefrom the sum of $26,020.93. At the time of the completion and acceptance of said road there remained in the hands of Rockwall county, as part of the retained percentage due on said contract, $3,861.85, which sum the said surety demanded from the county in writing on June 15, 1925, which demand the commissioners' court of said county refused. That appellant casualty company sued Kirk, Patterson, and Braddock for the sum of $6,175.-20, the aggregate amount of the two sums alleged to be due by them to said appellant, and for judgment against Rockwall county for the sum of $3,861.85, the retained percentage due on said contract, and that the commissioners' court of said county be ordered and directed to approve and direct payment of same to appellant casualty company. On July 15, 1925, the Farmers' National Bank of Rockwall instituted its suit against said J. H. Patterson and D. S. Kirk, composing the firm of Kirk & Patterson, and the county of Rockwall, to recover against said Kirk & Patterson the several sums of money due it on account of two notes executed by them, payable to said bank, each for the sum of $2,000 and each providing for the payment of interest at 10 per cent. per annum from date until paid, and for attorneys' fees, one of said notes being dated December 11, 1924, and due January 15, 1925, and the other dated December 20, 1924, and payable on demand, the last-mentioned note being entitled to a credit of $700 paid on April 2, 1925. That to secure said bank in the payment of said notes, said Kirk & Patterson, on December 11, 1924, executed the following assignment in favor of said bank, addressed to the commissioners' court of Rockwall county, viz.:

"This will be your authority and you are hereby ordered to make your January estimate check payable to the Farmers' National Bank of Rockwall, Tex., for the amount then due or allowed Kirk & Patterson on the Rockwall-Heath road contract. This is also an order to the said bank against any retainage that might be coming to the said Kirk & Patterson on said note."

Said assignment was, on or about January 1, 1925, lodged with the commissioners' court of Rockwall county, said bank claiming that Rockwall county owed a balance to said Kirk & Patterson accruing to them for the construction of said road which was in excess of $10,000, and that title to said sum was in said bank by virtue of said assignment to the extent of the indebtedness of said Kirk &

Patterson to said bank, and prayed for judgment against the defendants Kirk & Patterson, and each of them, for the amount of balance due on the notes sued upon.

On May 23, 1925, the McDonald Hardware Company, a corporation, as plaintiff, filed its original petition, which was amended June 7, 1926, complaining of Kirk & Patterson, a copartnership composed of D. S. Kirk, J. H. Patterson, and J. G. Braddock, and Employers' Casualty Company, as defendants, on an itemized account amounting to $1,195.09, for wares, goods, and merchandise sold and delivered by said plaintiff to said Kirk & Patterson. Said amended petition alleged the execution of said road contract between Rockwall county and Kirk & Patterson, the execution of the bond of indemnity. by said Kirk & Patterson with said Employers' Casualty Company as surety, the default in the performance of said contract by Kirk & Patterson, the taking over of the contract and completion of said road by said Employers' Casualty Company, as per contract; that the goods, wares, and merchandise, being all of the items comprising said account, were materials incident to and used by Kirk & Patterson in the performance of said contract; that said Employers' Casualty Company did take and convert to its own use and benefit all of said materials, goods, wares, and merchandise, sold by said plaintiff to defendants Kirk & Patterson, and sought to recover against the defendants in its suit under and by virtue of the terms of said indemnity bond the amount due on said account. All of said work was done and complete performance of said contract made and final settlement therefor had on the 13th day of July, 1925. Said suit was filed February 12, 1926, and notice of the pendency thereof was duly and legally published in the Rockwall Success, a newspaper published weekly in Rockwall county, Tex., said notice having been published for the time and in the manner required by law. Under and by virtue of the terms of said bond, the makers thereof became bound and obligated to pay said hardware company said sum of $1,134.09 for said material. Employers' Casualty Company was further bound and obligated to pay said sum by reason of its having taken said property so sold to said contractors for its own use and benefit.

On the 7th day of June, 1926, an order was entered consolidating cause No. 2013, McDonald Hardware Co. v. Kirk & Patterson et al., and cause No. 2020, Farmers' National Bank of Rockwall v. J. H. Patterson et al., with cause No. 2150, Employers' Casualty Co. v. Rockwall County et al. Prior to said order of consolidation, the Farmers' National Bank of Rockwall had under the prayer of Rockwall county filed its plea of intervention in said cause No. 2150, alleging the execution of the two notes and assignment to secure

same by Kirk & Patterson, and its superior equitable right as against all claimants to the funds due by said county on said road contract, to the extent that same might be necessary to pay off and dicharge its said indebtedness.

Paul Snow, doing business as the Snow Motor Company, filed his plea of intervention April 13, 1926, in cause No. 2013, McDonald Hardware Company v. Kirk & Patterson et al., complaining of Kirk & Patterson, a copartnership composed of D. S. Kirk, J. H. Patterson, and J. G. Braddock, and the Employers' Casualty Company, alleging that he furnished said Kirk & Patterson with automobile parts, gasoline, lubricating oil, tires and tubes, and extra parts and performed labor in repairing automobiles used by said Kirk & Patterson in the construction of said nine miles of road for Rockwall county; that all the material so furnished was material furnished and labor performed in the performance of said contract in the building of said road; alleged the execution of the contract between Rockwell county and Kirk & Patterson for the construction of said road by Kirk & Patterson, the execution of the indemnity bond by Kirk & Patterson with Employers' Casualty Company as surety, the inability of said Kirk & Patterson to complete said road, the taking over of the construction of same by said casualty company and the completion of the work according to contract; that the material and labor so furnished and performed amounted to $914.47, and that said sum was due, unpaid, etc.; sought judgment for said amount against Kirk & Patterson, as principals, and Employers' Casualty Company, as surety on said bond.

J. H. Smith filed his application for permission to intervene in cause No. 2013, McDonald Hardware Company, a Corporation, v. Kirk & Patterson et al., alleging that during the time Kirk & Patterson were constructing said road for Rockwall county he sold them certain goods, wares, and merchandise on the dates and in the amounts as specified in his verified, itemized account for laborers employed by said Kirk & Patterson in performing said work; that it was necessary for said contractors to furnish food and groceries to the laborers working on said contract; said laborers being chiefly Mexicans, and thereby there was no place for them to board or otherwise furnish themselves, it was necessary for same to be furnished by said contractors, in order to expedite the completion of said contract; also alleged the making of the contract by Kirk & Patterson with Rockwall county to construct said nine miles of road, the execution of and the terms and obligations of said bond of indemnity, the inability to perform said contract on the part of Kirk & Patterson, the taking over of same and its performance by said casualty company, that said sum so sued for was due

and unpaid, and sought judgment on said bond against the principals and surety thereon.

The Employers' Casualty Company objected to said plea of intervention being filed on account of the following facts admitted as true: That said J. H. Smith did 'on the 21st day of March, 1925, file a suit in the county court of Rockwall county, Tex., against D. S. Kirk, J. H. Patterson, and the Employers' Casualty Company, on the same cause of action set up in said plea of intervention, and that said suit was tried on the 9th day of April, 1925, in said court and judgment by default rendered on said date in favor of said Smith against the said Kirk & Patterson and the Employers' Casualty Company, for the same sum of money sued for in said plea of intervention; that thereafter the Employers' Casualty Company sued out a writ of error to the Court of Civil Appeals, executing a supersedeas bond; that said appeal resulted in judgment being rendered on the 22d day of May, 1926, 284 S. W. 991, reversing and remanding said cause to the county court of Rockwall county, Tex.; that said cause is still pending in the Court of Civil Appeals, the said J. H. Smith having not had a mandate issued from said court; that said action is still pending and involves the same cause and matter and is between the same parties as in this intervention which the said J. H. Smith desires to file herein; that said Smith has not obtained service of citation on D. S. Kirk and J. H. Patterson on his plea of intervention and they have not answered in this suit and have not appeared herein.

Said objection was sustained, and J. H. Smith, not permitted to file his plea of intervention.

[1]. Appellees Hardware Company and Paul Snow objected to the order entered requiring consolidation of suits Nos. 2150 and 2020 with suit No. 2013. The law providing for the execution of the bond sued on also requires that all rights asserted under said bond shall be determined in one litigation. regardless of the amount of claims or the parties asserting same. In fact, in so far as having the right to recover under the bond, it was imperative that all parties claiming thereunder assert their rights by plea of intervention, or, if suit had theretofore been brought, by having same consolidated with the suit filed in accordance with the requirements and terms of article 5162, R. C. S. 1925. Therefore the court did not err in requiring said causes to be consolidated, as the general rule relied upon by appellees in making objection thereto does not apply, but the consolidation of same was ruled entirely by the provision of article 5162, supra.

[2] As to the objection that appellee Smith had not obtained service of citation upon D. S. Kirk and J. H. Patterson upon his plea of intervention and said parties had not answered in said cause No. 2013, and therefore said plea of intervention could not be considered therein, it is clear from the following provision of article 5162, supra, "Where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contractor and not later," that as the contractors, as principals, and the sureties on their bond, had been made parties defendant to said cause No. 2013, they having been duly cited to appear therein and the cause of action being based on the bond, which was executed for the benefit of all persons supplying the contractors with labor and material for the prosecution of the work provided for in the contract entered into with Rockwall county, it was not contemplated "that a creditor protected by the provisions of said bond, and therefore interested in the prosecution of the suit thereon, should be required, on filing his claim in such action, or being made a party thereto, to obtain service of citation on his cause of action so asserted against the makers of said bond, the suit being in effect under the law instituted for the use and benefit of all creditors of the contractors within the meaning of the obligation of the bond, and being required under the law to assert their claims in the action so brought, the law permitting only one action to be brought for that purpose. Therefore there was no merit in this objection as same, if complied with, would have been but the performance of a perfunctory service, as the makers of said bond were required under the law to take notice of the fact that all creditors asserting rights under the bond involved in said cause were not only permitted but required to litigate their rights in the one action instituted thereon.

After said causes had been consolidated, pleas of intervention were filed therein by T. A. Snow and J. H. Smith, and in further prosecution of its claim appellee bank filed its plea of intervention, retaining as a part thereof its original petition filed in cause No. 2020, in which it made appellant surety a party, alleging and proving that the entire sum of $4,000 advanced by said bank to the contractors, principals in said bond sued on, was actually paid out to and received by laborers who performed labor upon the construction of the highway for appellee county by said contractors, and that the amount so advanced and paid out for labor was $4,038.24.

The answer of Rockwall county to the several pleas seeking to hold it liable in any respect in the main presented the same defense, viz., that it had no interest in the litigation involved in the several suits or the claims asserted by the pleas of intervention

filed therein; that as to that portion of the petition of Employers' Casualty Company wherein it is sought to hold said county liable for the payment of funds alleged to be in its possession belonging to the firm of Kirk & Patterson, which said Casualty Company alleged to be a trust fund, in the sum of $3,996.47, residue or balance owing to Kirk & Patterson out of road funds on the contract involved, said county alleged that the true amount in its hands was $3,861.85, instead of the amount alleged by said Casualty Company; that it did not know whether said fund was a trust fund or not, or what right, title, or interest the Employers' Casualty Company or the Farmers' National Bank of Rockwall had in said fund; that before the filing of either of said suits against said county, said National Bank and Casualty Company both demanded the payment of said funds; that it was in doubt as to whether said sum of $3,861.85 was due to the Farmers' National Bank of Rockwall or to the Employers' Casualty Company, or to Kirk & Patterson, and sought to have said cause No. 2150 and cause No. 2020 consolidated to the end that the rights of all parties, whether original or intervening, to said causes, who asserted an interest in said fund, should be determined in one trial.

The Employers' Casualty Company interposed a general denial to the pleas of Farmers' National Bank of Rockwall, McDonald Hardware Company, and Snow Motor Company, and, in addition, as to the claim of Snow Motor Company, denied under oath that any material or labor was furnished by said intervener to said contractors which was used in the construction of said road or incident thereto. Employers' Casualty Company, in answer to all adverse claims made to the funds admitted by Rockwell county to be in its hands as a balance due on account of said road contract, pleaded that it was entitled to said funds by virtue of the equitable assignment made to it by Kirk & Patterson before and at the time it became surety on said indemnity bond, and further pleaded the assignment of said funds made by said Kirk, Patterson, and Braddock at the time it was agreed that said contractors had defaulted in the performance of their said contract, and on account thereof said surety company had to take over the performance of same, and that to indemnify and save it harmless on account of any moneys it should be called upon to expend in the discharge of its obligation as surety on said bond, all moneys then due or to become due on account of said contract were assigned and transferred to said surety company, and that by virtue of said assignment said surety company was entitled to the funds so admitted to be on hand by said Rockwall county. In answer to the claims of McDonald Hardware Company and Snow Motor Company, said surety company

alleged that if it was ever liable on said claims, or either of them, which it denied, that it had been released and discharged because there was still in the hands of the county of Rockwall more than enough money to satisfy both of said claims if the bond was responsible for it, and neither of said parties had exhausted the security which they had in said amount so due before having recourse against said Employers' Casualty Company, as surety on said bond, all of which was a detriment and damage to said Surety Company, in that said fund in the hands of the county was a trust fund and the county was trustee thereof for the benefit of all claims for labor and material which were unpaid on said road contract.

The county of Rockwall answered in said consolidated suit admitting that it had in its hands the sum of $3,861.85 as the balance due on said contract, and asked that the rights of the parties claiming said fund be litigated so as to determine to whom said fund belonged, in order that the county might be protected in making payment thereof; that it asserted no rights in said fund and tendered same into court to be disposed of according to the judgment rendered, and also asked that it have judgment for $500 as attorney's fees.

Appellant Surety defended the interventions of appellant Hardware Company and appellee Snow on the ground that the items sued for by said parties respectively were neither labor nor "material" and were therefore not covered by said bond.

On the issues thus joined, said consolidated causes proceeded to trial, before a jury, which resulted in the judgment rendered on an instructed verdict, in favor of Farmers' National Bank of Rockwall against the contractors, Kirk, Patterson, and Braddock, for $4,153.42, and in favor of said bank for balance due on the contract in the hands of Rockwall county, less $500 attorney's fees allowed to the county, which amount aggregated $3,361.85, in favor of the Snow Motor Company against said contractors and the surety company for the sum of $914.47, in favor of Rockwall county for $500 attorney's fees and costs of court, in favor of McDonald Hardware Company against said contractors in the sum of $1,134.09, and against the surety company for the sum of $25, and in favor of said indemnity company against said contractors in the sum of $6,175.20.

For brevity the parties will be hereinafter referred to as follows: The Employers' Casualty Company as "appellant surety," McDonald Hardware Company as "appellant company," J. H. Smith as "appellant Smith," Rockwall county as "appellee county," Paul Snow as "appellee Snow," and Farmers' National Bank of Rockwall as "appellee bank."

[3] The first proposition to engage our attention is one advanced by appellant surety,

viz., that appellant company cannot have the judgment appealed from, in so far as it is concerned, reviewed because of lack of record for such purpose. This is based upon the following facts as revealed by the record: Judgment was rendered against appellant surety for $25. It sought a judgment against said surety for $1,195. Its motion for new trial was overruled June 10, 1926. Said company gave notice of appeal and was allowed 60 days from date of said order within which to file statement of facts and bills of exception. Appellant company did not file, and has not independently at any time filed, a statement of facts or a transcript in the Court of Civil Appeals. The appellant surety did not appeal from the judgment rendered in favor of appellant company, but did appeal from the final judgment rendered in so far as same was against it in favor of appellees bank, county, and Snow. This contention cannot be sustained. The judgment appealed from was rendered June 7, 1926. Appellant company filed its motion for a new trial June 10, 1926, on which date it was overruled, the order entered thereon granting said appellant 60 days from that date in which to file statement of facts and bills of exception. Under the law said appellant was allowed 80 days after the adjournment of the term of court within which to prepare and file its statement of facts and bills of exceptions in the trial court. Subdivision 1, art. 2246, R. C. S. 1925. It was not within the power of the trial court to shorten, but only upon proper application to extend, the time for filing such statement of facts and bills of exceptions. Subdivision 3, Id. The transcript was only required to be filed with the clerk of the Court of Civil Appeals within 90 days from the perfection of the appeal. Article 1839, R. C. S. 1925. The appeal was perfected when appellant company filed its appeal bond in compliance with the law. Article 2253 and article 2267, Id. Under rule 3 for the Courts of Civil Appeals, either litigant may file a transcript, and under rule 5, Id., if a transcript is filed within proper time, by either party to the cause appealed, same shall be regarded as a transcript of the record in the cause.

"Proper time" referred to in said rule 5 was held by this court (in Farmers' State Bank of Mineola v. Mincher, 267 S. W. 996) not to include an extension of time allowed by law in the first instance, granted to only one of the parties appealing, for the filing of the transcript, where the matter involved in the appeal by the appellant perfecting same was independent of matters attempted to be appealed by the other party to the suit. The statement of facts, as well as the transcript of the record, was filed in the court below within less than 80 days from the date appellant company perfected its appeal, and said documents were filed in the Court of Civil Appeals within the 90 days required by law. Vernon's Ann. Civ. St. 1925, art. 1839. Said objection to the appeal of appellant company is overruled.

The court refused the application of appellee Smith to intervene in cause No. 2150, Employers' Casualty Company, Appellant, v. Rockwall County, Appellee, sustaining the objection presented thereto by appellant surety. In this we are of the opinion that the court erred, as said suit No. 2150, as well as the cause of action alleged in said plea of intervention, involved an asserted liability upon a surety bond executed under chapter 4, art. 5160, Vernon's Statutes 1925. Article 5161, Id., authorizes suits to be instituted upon the bond executed under the provisions of article 5160, supra, and to prosecute such suit for his or their benefit, by any person or persons supplying the contractor with labor and materials, where no suit has been brought by the state or municipality within six months from the completion and final settlement of the contract. Article 5162, Id., provides in part that:

"When suit is instituted by any creditor on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later; * * * where suit is so instituted by a creditor or by creditors only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contractor, and not later."

[4, 5] The fact that appellant Smith had instituted suit for the same debt in the county court of Rockwall county, recovered judgment by default against appellee contractors and appellant surety, and said suit was pending in the Court of Civil Appeals at the time said Smith intervened in said cause No. 2150, was no bar to his right to have said plea of intervention heard and determined in said cause No. 2150. The suit in the county court was not on the bond, but was for debt, and no opportunity was afforded appellant Smith to elect in which of these suits he would litigate his claim. The filing of his plea of intervention was but in effect an abandonment of the suit filed in the county court, as that court did not have jurisdiction to determine his claim under the bond; the amount of the bond being over $1,000, jurisdiction was with the district court. The filing of the suit in the county court, a court without jurisdiction to hear and determine the rights of appellant Smith under the bond, was not an election of remedies, but was the erroneous selection of a tribunal without jurisdiction to hear and determine said cause, as alleged in appellant's plea of intervention, because under the law only one action can be maintained by creditors against a surety on contractor's

bond. Therefore the jurisdiction is not determined by the amount of any one creditor's demand, but by the amount of the bond, the liability of the surety being measured by the penalty named therein which determines the court's jurisdiction. American Surety Co. v. Foust (Tex. Com. App.) 272 S. W. 445. The court therefore erred in'striking out appellant Smith's plea of intervention and refusing to hear the same to a conclusion on the facts.

[6] Very earnest objections are urged to the consideration of the several major propositions [presented by appellant surety. We have carefully examined the several grounds presented in support of the 'motion for a new trial, the assignments of error, and propositions of law upon which its appeal is predicated, and while we have found that in several respects there has been a failure to strictly observe the rules for briefing prescribed for Courts of Civil Appeals, to which a rigid adherence would result in said appeal not being considered, although said rules were undoubtedly promulgated only to aid appellate courts, in the performance of their labors, to readily ascertain and investigate questions ·presented by appeals for review, and unless a strict adherence is necessary to accomplish such purpose, said rules should not be strictly adhered to, especially where such strictness would result in denying a hearing on a just and meritorious cause. In other words, the substantial rights of parties should not be made subservient·to a strict compliance with a mere matter of procedure, as compared with that rule of action—the law defining and fixing the rights of parties under and by virtue of which their liabilities to answer before a judicial tribunal should be determined. We think that an appellate court would be going far afield to relieve itself of the duty of passing upon the merits of a cause to refuse to consider the same because the rules for briefing had not been strictly complied with, the observance of same being sufficient to point out with certainty the errors upon which the appeal was predicated. The observance of the rules by appellant surety being sufficient to indicate with reasonable accuracy and sufficient comprehension the errors complained of and the position of same in the trial of the cause, we overrule the several objections presented to the consideration of appellant surety's brief.

Appellee surety challenges the judgment rendered in favor- of appellee bank for $3,-361.35 of the amount retained, contracted to be paid, and which was payable under said contract and estimates of work performed thereunder, on the ground that it was entitled to the entire amount of $3,861.85, admitted to be due the contractors on said contract, first by a prior assignment to that under which appellee bank claimed the right to said fund; and, second, by its right of subrogation, in that it was subrogated to the rights of all laborers upon, and furnishers of material used in, the construction of said road, while appellee bank claimed its right thereto (a) by virtue of its assignment, (b) its right to recover against the principals and surety on said indemnity bond for the amount of $4,038.24, furnished by said bank to the contractors, and which was paid out by said bank on checks drawn by the contractors, payable to laborers in the construction of said road.; that thereby said surety company was liable to pay said bank said sum on account of labor performed in the construction of said road.

[7] The court having instructed the verdict upon which judgment was rendered in favor of appellees bank, Snow, and Rockwall county, and upon which judgment was rendered against appellant hardware company on its claim as against appellant surety, except as to the sum of $25, the judgment in favor of said appellees will have to be reversed unless it appears from the record that no other result could have been reached by the jury than that directed by the court, and reversed as to said appellant hardware company unless it appears from the record that there was an issue presented on which a different conclusion could have been reached by the jury from that instructed by the court.

[8] As to the issue between said appellant and appellee, based on the assignments asserted by them respectively, same must be determined in favor of appellant surety because of its valid, prior, equitable assignment. Hess & Skinner Eng. Co. et al. v. Turney et al., 110 Tex. 148, 216 S. W. 621; Rotsky v. Kelsay Lbr. Co. et al. (Tex. Com. App.) 228 S. W. 558; Cox v. New England Equitable Ins. Co. (C. C. A.) 247 F. 955. But this does not determine their rights to said fund. ·

Therefore, to sustain the judgment in favor of appellee bank, it must be on the ground that appellant surety was liable on the indemnity bond executed to appellee county, and if there was an issue of fact involved in that issue upon which a different conclusion could have been reached by the jury from the verdict instructed to be returned, then the judgment based on such instructed verdict must be reversed. We have carefully considered the undisputed evidence bearing upon this issue, and find that same established that appellee bank advanced to contractors the sum of $4,038.24; that all of said sum was paid out by said bank on checks drawn by said contractors in payment of and for the payment, and was used to pay off and discharge laborers, for labor performed by them in the construction of said road; that said contractors did not have other funds available out of which and with which to pay the laborers so paid with the money advanced by appellee bank to said contractors.

What of the bond? Its terms and provisions are:

"Whereas, it is desired to secure by the said firm of Kirk & Patterson to Rockwall county, Tex., the faithful performances of said contract:

"Now, therefore we, the said Kirk & Patterson as principals and the undersigned, the Employers' Casualty Company as surety, acknowledge ourselves held and firmly bound, jointly and severally to the said county of Rockwall, Tex., acting by and through its authorized board of county commissioners as well as to all persons who may perform labor or furnish materials on such contract and agreement or in any manner incident to the performance thereof in the sum of thirty five thousand ($35,000.00) dollars to be paid to the said county of Rockwall and to said persons who may perform labor or furnish material, their executors, administrators or assigns for the payment well and truly to be made we jointly and severally bind our heirs, executors and administrators.

The conditions of this obligation are such that if the said Kirk & Patterson, principals, shall truly and faithfully perform said contract and agreement, and shall well and truly pay all subcontractors, workmen, laborers, mechanics, and furnishers of material in full for all work done, labor performed and material furnished on the performance of said contract and agreement or in any manner incident to the performance thereof, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

[9, 10] Plainly the principals and surety in said bond became obligated to all persons who performed labor or furnished material on the contract to construct the road for Rockwall county or for labor performed or material furnished in any manner incident to the performance of the contract and agreement for the construction of said road, or in any manner incident to the performance of said contract and agreement. It is only necessary to give the language employed to create the contractual obligation of the parties its inherent meaning and effect, to gather therefrom the liability on the part of the surety, for the payment for all labor performed and material furnished on the performance of said contract and agreement, or in any manner incident thereto; and that such liability was not dependent upon the labor performed and material furnished entering into and becoming a part of the actual physical construction of the road. The language, "truly pay in full for all work done, labor performed, and material furnished on the performance of said contract and agreement, or in any manner incident to the performance of said contract," being broad enough to comprehend any labor performed or material furnished reasonably required for the performance of the contract, although not necessarily constituting an integral part of the material that entered into, or the labor performed for, the actual physical construction of the road as same existed when completed. By the plain language of the bond the rights

of the parties must be determined, and while its terms and provisions cannot be extended so as to include that which was not by its very language included or necessarily inferred, yet a proper interpretation of the expressions incident to the purpose for which the bond was executed will be resorted to to ascertain the extent of its obligation, and enforce the rights of the parties thereunder. Having regard for the common-law obligation of the bond, we think that it is clear that appellee bank was entitled to recover, under the terms and provisions of same, the judgment rendered by the trial court. Puget Sound State Bank v. Gallucci et al., 82 Wash. 445, 144 P. 698, Ann. Cas. 1916A, 767.

[11] While the additional obligation required by article 5160, supra, viz., "that such contractor shall promptly make payments to all persons supplying him or them with labor or materials in the prosecution of the work provided for in such contract," was not literally included in said bond, yet being a statutory requirement will be read into, as forming a part of, said bond just as if contained therein. However, the inclusion of said statutory obligation in the bond did not prevent the parties from including any other obligation whereby the suretyship was enlarged so as to extend the conditions thereof to embrace more comprehensively payments for labor performed or material furnished incident to the performance of the terms of the contract for which said bond was executed.

The following obligation of the bond extending the benefit of the surety afforded thereby was valid as a common-law obligation:

"As well as to all persons who may perform labor or furnish material on such contract and agreement, or in any manner incident to the performance thereof, * * * and shall well and truly pay all subcontractors, workmen, laborers, mechanics, and furnishers of material furnished on the performance of said contract and agreement or in any manner incident to the performance thereof."

The holding of the Supreme Court in the case of Hess & Skinner Eng. Co. v. Turney, 110 Tex. 148, 216 S. W. 621, denying to the bank in that case, under a similar state of facts to that involved here, protection by the bond, was based upon a bond containing only the "additional obligation" required by said article 5160, this case being differentiated from that case by the common-law obligation embraced in the bond in the instant case, upon which recovery is permitted to appellee bank herein. Therefore our holding is not in conflict with the holding of the Supreme Court in said Hess & Skinner Case.

The holdings as to the legal effect of the contractors' bond, as to furnishing security for the claim of appellee bank, applies with equal force to the claims of appellee Snow and appellants hardware company and Smith. Therefore no further observation will be made

in reference to the legal effect of said bond as to the claims of said parties.

The facts established by the evidence in support of appellee bank's claim were sufficient to justify the judgment rendered in its favor, viz., that the several sums of money furnished by said bank to the contractors, Kirk & Patterson, was obtained by said contractors from said bank for the purpose of being used in the performance of said contract with appellee county; that all of the money so furnished by said bank was in fact used by said contractors and paid out by said bank on checks drawn by said contractors payable to laborers for labor actually performed in the construction of the road so contracted for, and was incident to the performance of said contract.

[12] Although the contest between appellee bank and appellant surety, based solely upon their respective assignments, should have been resolved in favor of appellant surety, yet the judgment in favor of appellee bank being supported by, although not rendered upon, the liability of the surety to appellee bank for the funds paid out by said bank, in the manner above stated, for labor performed in the construction of said road, or incident thereto, and while it is true that on the bond appellee bank was entitled to recover the full amount paid out by it on account of such labor, yet, in the absence of a cross-assignment assailing the judgment as rendered on account of the amount or on account of the failure to render on the bond against the surety company, said appellee bank is not in position to have said judgment reviewed but is bound thereby. However, appellee bank is entitled to have the amount so awarded it against appellee county affirmed, because even if the amount of said retainage adjudged to said bank had been adjudged to appellant surety, appellee bank would have been entitled to have recovered the sum so adjudged to it against said surety on the bond, as for labor performed or incident to labor performed in the construction of said road.

[13] As to the judgment rendered in favor of appellee Snow, same was rendered upon the following facts, uncontroverted in the evidence and which amply sustain said judgment, viz.: That said appellee sold and delivered to said contractors oil and gasoline in the sum of $283.12, performed labor in repairing automobiles in the sum of $139.89, furnished parts to automobiles in the sum of $208.91, tires $277.50 and batteries $5, amounting to $914.47; that all of said materials were furnished and labor performed in the performance of said contract, and was incident to the performance of said contract, for the building of said road.

[14] As to the judgment for attorneys' fees rendered in favor of appellee county, the evidence established that said county occupied the position of a stakeholder with reference to the balance of the retainage admitted by it to be due under the contract and which amount was tendered into court, viz., $3,861.85; that there were adverse claimants to said sum, to wit, appellant surety and appellee bank, under different assignments executed by the contractors, Kirk & Patterson; that it acted in good faith in asking that all parties claiming an interest in said sum be required to interplead their claims to the end that it might be judicially ascertained to whom same was payable, that the county might be protected in paying out said sum. As to the good faith of the county in this respect, there was no issue to be submitted to the jury. However, as to what was the reasonable amount of attorneys' fees to be awarded, an issue of fact was presented which should have been submitted to the jury, because the testimony as to what sum would be a reasonable fee did not foreclose the inquiry in that respect. As a matter of fact, the testimony was not such as would have required no other finding thereon than the one directed to be made by the instructed verdict, as the jury had the right to determine that issue from all of the facts before it with reference to the services performed by the attorneys representing the county, and could have found a less sum notwithstanding the testimony of the only witness introduced on that issue was to the effect that $500 was a reasonable sum. The jury was not limited in deciding the issue to the testimony as to the sum of $500 being a reasonable amount, as the amount involved the position of the county in the litigation, and the skill required and time consumed were all to be considered as evidence thereon.

[15] We are not unmindful of the holding in the case of Herndon v. Lammers (Tex. Civ. App.) 55 S. W. 414, to the effect that "where the only testimony was that a certain amount was a reasonable attorney's fee, it was error to submit to the jury what a reasonable fee would be," and recognize that our holding is in conflict therewith. This because we know of no rule of law that would dispense with a trial by jury on an issue of fact involving the reasonable amount of attorneys' fees to be allowed to one occupying the position of an interpleader and apply thereto the general rule that where there is any latitude for a difference of opinion between reasonable men, under all the facts and circumstances involving any transaction submitted to judicial determination, an issue of fact is presented requiring the submission of same to the jury impaneled in the cause, it being the province of the jury to pass upon every controverted issue of fact between the parties. Therefore the court invaded the province of the jury in instructing a verdict for any particular sum, as the determination of that issue rested with the jury.

The facts established by appellant hardware company in support of its allegations

that the goods, wares, and material furnished by it were necessary to the performance of the contract, and were used therein and incidental to the performance thereof, and that said appellant surety took over all the material so furnished that was not used in the construction of said road and appropriated the same to its use and benefit, were sufficient to require the submission of the issues thus raised by the pleading and proof to the jury for its determination.

[16] Appellant Smith's allegations that he furnished goods, wares, and merchandise to the contractors that same were necessary for or incident to the performance of the contract and entered into the performance of same, in that it was necessary to provide sleeping and eating accommodations for a large number of the laborers who performed labor in the performance of said contract, and that all of the goods, wares, and merchandise so furnished by him were so used and consumed by laborers who performed labor in the construction of said road, were sufficient to constitute a cause of action on said bond. So, Surety Co. v. Guaranty St. Bank of DeLeon (Tex. Civ. App.) 275 S. W. 436; So. Surety Co v. Callahan Construction Co. et al. (Tex. Civ. App.) 283 S. W. 1098; U. S. F. & G. Co. v. Henderson County (Tex. Civ. App.) 253 S. W. 835.

We are of the opinion that the judgment of the trial court in favor of appellees bank and Snow should be affirmed, but that the judgment of the trial court rendered as to appellants hardware company and Smith and pellee county as to attorney's fees should be reversed and the cause remanded for further proceedings between said parties and appellant surety; and it so ordered. The judgment in favor of appellant surety against the contractors, Kirk, Patterson, and Braddock, not being disturbed by this appeal, no order will be made in reference thereto.

Affirmed in part, and reversed and remanded in part.

## On Appellant's Motion to Make and File Additional Findings of Fact.

It appearing from the above motion that perhaps the findings of fact as made by this court in its original opinion are not as full as same should have been, we grant appellant's motion for additional findings as follows:

That the account of the appellee Paul Snow, upon which a recovery was sought against the appellant Employers' Casualty Company, covers the following items:

(a) Oil and gasoline used in automobiles and trucks, which were used by the contractors in performing said contract... $283 17

(b) Labor, which was in the form of repair work, performed by the mechanics employed by the appellee Paul Snow at his garage, on said automobiles and trucks  139 89

(c) Parts, which include electric bulbs, timers, various automobile parts and accessories, sold by appellee Snow and put on, or used on, said automobiles or trucks .................................  208 91

(d) Tires, which include new automobile casings and tubes, as well as vulcanizing work on old ones, which were used on said automobiles and trucks...........  277 50

(e) Batteries used on said automobiles and trucks .....................................  5 00

                                              —————
                                              $912 48

That the account sued on by the McDonald Hardware Company, one of the appellants, which was denied by the trial court, covers hammers, shovels, post augers, dishpans, spoons, frying pans, stovepipes, wrenches, dippers, knives, forks, tape lines, lantern, iron water pipe, nipples, ells, unions, and sleeves used therewith, as well as singletrees, bolts, washers, tacks, screw drivers, pliers, gravel scoops, axle saw, blades, buckets, oil cans, padlocks, lamp chimneys, shovel hammers, sledge hammers, and blow torches.